UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA   )
            Plaintiff     )
                          )   Cr.# 04-10299-PBS
     v.                   )
                          )
MARIA ESCOBAR, aka        )
    LUZ LUCIANO           )
            Defendant     )
_____  )
```

**SENTENCING MEMORANDUM OF DEFENDANT PURSUANT TO F.R.Cr.P. RULE 32(a)(C) and 18 U.S.C. § 3553(a)**

*It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.*

United States v. Koon, 518 U.S. 81, 113 (1996)

This memorandum is being submitted to assist this Honorable Court in its determination of the most appropriate sentence for Ms. ESCOBAR by addressing each of the available sentencing options under the provisions of 18 U.S.C. § 3553 (a) as now constitutionally required by the Supreme Court. This memorandum will supplement the PSR and submit reasons why this Court should consider and grant a sentence that is below or "in variance" with the advisory Guideline level based on various **factors in mitigation**.

Following the decisions of United States v. Booker 543 U.S. __, 125 S. Ct. 738 (2005) and Blakely v. Washington, 542

1

U.S. ___, 124 S. Ct. 2531 (2004) this Honorable Court is free to look at **all** the factors of 18 U.S.C. § 3553(a) in imposing a "reasonable sentence" that is "sufficient, but not greater than necessary to comply with the purposes set forth [ in this provision]." While § 3553(a)(4) requires the Court to consider the Guideline ranges, "it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." *Booker,* Breyer, J. 125 S.Ct. at 757.

The United States Court of Appeals for the First Circuit just recently, in United States v. Jiminez-Beltre, Dkt No. 03-1268, *en banc,* reiterated the importance of the imposition of a discretionary "reasonable sentence" and agreed with the approach taken by the district court, Saylor, J, of determining the guideline range including any departures, followed by a determination of whether other factors warrant a sentence outside the guideline range. The First Circuit expressed, however, that "guidelines are still generalizations that may appear unreasonable to sentencing judges in particular cases.... *Booker's* remedial solution makes it possible for court's to impose non-guideline sentence that override the guidelines subject only to the ultimate requirement of reasonableness." (Emphasis in opinion).

One may ask: "What is a sentence that is "sufficient, but not greater than necessary" as required by § 3553(a)? Justice Kennedy, in his 2003 speech to the American Bar Association openly commented on the unfair severity of federal sentences and the harmful effects that the rigid application of the

Sentencing Guidelines had on individuals and society as well as the Guidelines readily apparent failure:

"Our resources are misspent, our punishments too severe, our sentences too long....In the federal system the sentencing guidelines are responsible in part for the increase in prison terms....The Federal Sentencing Guidelines should be revised downward..."

In the instant case, Ms. ESCOBAR stands before this Honorable Court ready to be sentenced for her limited participation in a large, well organized, multi state conspiracy involving the distribution of cocaine.  Ms. ESCOBAR, a 47 year old mother from Guatemala with no prior history of any criminal involvement, became involved after her husband, Carlos Argueta, who worked for one of the principles, Valentin Martinez, abandoned her. <u>See</u> PSR ¶s 3, 58.  Martinez offered her a home [which was utilized by the organization as a stash house] and the ability to take over her husband's job as a "runner."  Her role was limited to making deliveries.  She was not directly involved with the distribution of cocaine.  She was akin to a simple "courier" who clearly was not indispensable to the transaction. **She had no control over the amount of the drugs, to whom they will be distributed, or the financial arrangements** once the introductions were made. Therefore, under Guideline calculations, a **4 level decrease** in role may be appropriate when a defendant, such as she, is among the least culpable of those involved in the criminal activity.

<u>Guideline Calculations</u>

Ms. ESCOBAR agrees with Probation that, under Guideline calculations, she could be held responsible for the acts in furtherance of jointly undertaken criminal activity and thus the total amount that Ms. ESCOBAR can be held responsible for is in excess of 50 kilograms of cocaine, PSR ¶ 30, but further agrees that her Guideline level is capped at **30** pursuant to U.S.S.G. § 2D1.1(a)(3). PSR ¶ 33. After role reductions, "safety valve" reductions and adjustments for minimal role, Ms. ESCOBAR submits that her Guideline level is **21.** There is no mandatory minimum because of her compliance with the "safety valve." PSR ¶ 34.

Without the Guidelines being mandatory, however, this Honorable Court is free to look at other § 3553(a) factors such as comparative sentences and many traditional factors in mitigation that would help in imposing a just and fair sentence.

**FACTORS IN MITIGATION**

As an alternative to the above Guideline calculations, Ms. ESCOBAR respectfully submits that this Honorable Court could take into consideration the following additional 3553(a) factors in mitigation that may be seen as alternatively grounds for departure or reasons for a *variance* with the Guidelines:

**The history and characteristics of the defendant**

As set forth in the PSR ¶s 53-62 Ms. ESCOBAR has had a very difficult life, punctuated by violence and fear. Growing

4

up in Guatemala she came from a poor environment where she dropped out of school after the 5th grade when she was approximately 9 years old because she needed to work, PSR ¶s 55, 71.  Ms. ESCOBAR's sister was murdered and she thereafter took care of her sister's children. PSR ¶ 57. One of her own daughters was born "in a vegetative state" and died in 2002 at the age of 17. PSR ¶61.  Ms. ESCOBAR came to the United States illegally to look for a better life for her and her children. PSR ¶ 56.  She now faces certain deportation back to Guatemala, a country that continues to be tormented by violence to women. See attached articles.   Also attached hereto is a newspaper article concerning the violent murder of two  members of Ms. Escobar's family in Guatemala.

**Aberrant behavior**.  Prior to being abandoned by her husband and her embarking on the course of conduct involved in the instant offense, Ms ESCOBAR lived a hard working, law-abiding life. PSR ¶s 73-75.  When her sister was murdered she undertook the care of her sister's children. After her husband left her, she unfortunately chose the wrong course of working for her husband's employer in his illegal conduct.

**Minimal or peripheral Role** As set forth above, Ms. ESCOBAR played a very limited role in this extensive criminal enterprise. She is, therefore, clearly **less culpable** than the other persons involved in the criminal activity.

5

**Extraordinary acceptance of responsibility**. **Cooperation not amounting to a Government 5K1 motion**... Ms. ESCOBAR fully expects that the government will file a U.S.S.G. § 5K1.1 motion based on her assistance to the government in the prosecution of others. Even if it does not, or does not make a recommendation reflective of her true value, such cooperation may be found to amount to an "extraordinary acceptance of responsibility " in that it is a mitigating circumstance that would allow for a departure under U.S.S.G. § 5K2.0. See e.g. United States v. Truman, 304 F. 3d 586 (6th Cir. 2002); United States v. Kaye, 140 F.3d 586 (2d Cir. 1998).

Ms. ESCOBAR's **early admission, and cooperation** with the government, which has been fully communicated to her co-defendants, has resulted in testimony supporting the conviction of two co-defendants, has likely instigated others to plead guilty rather than proceed to trial and has thus saved the government significant resources beyond that typically associated with "acceptance of responsibility." Such a "departure" is consistent with that contemplated by U.S.S.G. § 5K2.3. Again, the government should be making a § 5K1.1 motion, however, Ms. ESCOBAR's conduct would warrant a departure in the absence of such a motion.

"**Fast Track**." The government is allowed to make a motion pursuant to U.S.S.G. **§ 5K3.1** reducing an offense level up to 4 levels in an "authorized" district and it would appear that the fundamental constitutional principal of equal protection would require the application of that kind of Guideline departure to

6

all similarly situated defendants if the goal of eliminating unwarranted disparities is to be met.

The **likelihood of a more onerous incarceration status as a result of her alienage** as compared with other inmates. See United States v. Bakeas, 987 F. Supp. 44, 48-49 (D.C. Mass. 1997). Further, is the fact that Ms. ESCOBAR is subject to mandatory deportation back to a country where violence is paramount, in additional to the expected unequal BOP treatment of deportable aliens.

Lastly, Ms. ESCOBAR respectfully submits that even if any one of the above reasons do not provide a sufficient ground for the sentence requested here, **the totality of circumstances** justify the "reasonable sentence" requested. Cf. United States v. Iaconetti, 59 F. Supp. 2d 139 (D.C. Mass 1999).

### RECOMMENDED SENTENCE

Ms. ESCOBAR, has now spent approximately **ten months actual time** in custody pending these proceedings. Given her certainty of deportation and the strong likelihood of further incarceration of several months (detention) pending deportation, a sentence to **time served** with five years of supervised release (while she is in the United States), would be a sentence that is sufficient but no more than necessary to carry out the provisions of 18 U.S.C. § 3553(a). Such a sentence would avoid disparity, reflect the seriousness of the offense and provide Ms. ESCOBAR with needed treatment and

7

rehabilitation. It is also a "reasonable sentence" that fully to complies with the all the factors set forth in § 3553(a)(2) and well within the discretion of this Honorable Court.

Date:  March 22, 2006                Respectfully submitted,

                                     MARIA ESCOBAR,
                                     By her attorney,

                                     *s/Michael C. Bourbeau*

                                     Michael C. Bourbeau (BBO #545908)
                                     Bourbeau and Bonilla
                                     77 Central St, 2nd Floor
                                     Boston, MA 02109
                                     (617) 350-6565

**Certificate of Service**
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.
*S/ Michael C. Bourbeau*